Zheng v. Garland

BIA
Cassin, IJ
A206 430 882

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of July, two thousand twenty-three.

PRESENT:
DENNIS JACOBS,
RAYMOND J. LOHIER, JR.,
EUNICE C. LEE,
*Circuit Judges.*

_____

FEI-LUAN ZHENG,
*Petitioner*,

v.                                                          **21-6062**
                                                            **NAC**

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,
*Respondent.*

_____

**FOR PETITIONER:**          Jed S. Wasserman, Law Office of Ng & Wasserman, PLLC, New York, NY.

**FOR RESPONDENT:** Brian Boynton, Acting Assistant Attorney General; Jessica E. Burns, Senior Litigation Counsel; Nelle M. Seymour, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Fei-Luan Zheng, a native and citizen of the People's Republic of China, seeks review of a January 8, 2021 decision of the BIA affirming a September 12, 2018 decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Fei-Luan Zheng*, No. A206 430 882 (B.I.A. Jan. 8, 2021), *aff'g* No. A206 430 882 Immigr. Ct. N.Y. City Sept. 12, 2018). We assume the parties' familiarity with the underlying facts and procedural history.

We have considered the IJ's decision as modified by the BIA, i.e., minus the adverse credibility determination that the BIA did not rely on. *See Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir. 2005). The applicable standards of review are well-established. *See* 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be

2

compelled to conclude to the contrary."); *Paloka v. Holder*, 762 F.3d 191, 195 (2d Cir. 2014) (reviewing factual findings for substantial evidence and questions of law de novo); *Gjolaj v. Bureau of Citizenship & Immigr. Servs.*, 468 F.3d 140, 143 (2d Cir. 2006) (reviewing nexus determination for substantial evidence).

Zheng alleged that he was arrested, detained, and beaten on account of his political opinion when he rejected compensation offered in exchange for the demolition of his home to make way for a road, and he asserted a fear of future persecution and torture in China on account of his activities supporting the China Democracy Party ("CDP") in the United States. The dispositive issues are whether Zheng established (1) a nexus to a protected ground for his past harm, (2) an objectively reasonable fear of persecution or torture based on his political activities in the United States, or (3) a likelihood of torture stemming from his resistance to the demolition. The agency did not err in concluding that Zheng failed to establish his eligibility for asylum, withholding of removal, or CAT relief.

I.    Nexus

To qualify for asylum and withholding of removal, an applicant must prove "a sufficiently strong nexus" between the suffered or feared harm and a protected ground. *Castro v. Holder*, 597 F.3d 93, 100 (2d Cir. 2010); *see also* 8 U.S.C.

3

§§ 1158(b)(1)(B)(i), 1231(b)(3)(A). "[T]he applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i); *see Quituizaca v. Garland*, 52 F.4th 103, 109–14 (2d Cir. 2022) (holding that the "one central reason" standard applies to both asylum and withholding of removal).

The agency reasonably concluded that Zheng failed to establish a nexus between this harm and a protected ground. Zheng asserts that his opposition to his house being demolished was based on his political opinion that "the compensatory laws surrounding land requisition were unconscionable or at the very least unreasonable." Pet. Br. 13. To demonstrate that persecution (past or prospective) bears a nexus to an applicant's political opinion, "[t]he applicant must . . . show, through direct or circumstantial evidence, that the persecutor's motive to persecute arises from the applicant's political beliefs," rather than merely from the persecutor's own opinion. *Yueqing Zhang v. Gonzales*, 426 F.3d 540, 545 (2d Cir. 2005). "[W]here the applicant's political belief takes the form of opposition to a government policy or practice that is visited on the population at large, mere subjection to that policy or practice will not itself qualify as persecution on account

4

of political opinion." *Id*. (internal quotation marks omitted). The applicant "must establish a fear of reprisal that is different in kind from a desire to avoid the exactions (however harsh) that a foreign government may place upon its citizens." *Id*. "[O]pposition to . . . government practices or policies[] may have a political dimension when it transcends mere self-protection and represents a challenge to the legitimacy or authority of the ruling regime." *Id*.

Here, the agency reasonably found that Zheng's opposition to his house being destroyed did not transcend self-protection. Zheng testified that he refused to consent to his house being demolished because he believed the government was offering him insufficient compensation and that the officers started beating him once he refused to accept the compensation. He also testified that police officers beat him in detention after asking if he had changed his mind about giving consent to demolition. But Zheng never testified to having a political opinion about the underlying highway construction project or the Chinese government's practice of seizing property in general. Thus, the agency reasonably determined that his actions did not "transcend[] mere self-protection and represent a challenge to the legitimacy or authority of the ruling regime." *Yueqing Zhang*, 426 F.3d at 548.

Zheng now asserts that he opposed the land requisition laws due to

government officials' collusion with property developers to pay little to no compensation to displaced residents. However, he cites no facts to support this articulation of his claim. Rather, he relies on a U.S. State Department Human Rights Report for China for its discussion of forced relocation for urban development projects and protests stemming from local officials' collusion with property developers. While Zheng testified that he and other affected residents sent letters to the city protesting the compensation offer, he did not state that he engaged in protests against the government policy like those described in the State Department Report. The fact that others have expressed general political opposition to the policy does not establish that Zheng did so or that the police targeted him for a political opinion rather than for his resistance to the demolition of his own home without additional compensation. *See id.*; *Castro*, 597 F.3d at 100.

II.    Objectively Reasonable Fear

Where, as here, an applicant did not suffer past persecution, he has the burden to establish a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1). To establish a well-founded fear of future persecution, an applicant must "present credible testimony that he subjectively fears persecution and establish that his fear is objectively reasonable." *Ramsameachire v. Ashcroft*,

6

357 F.3d 169, 178 (2d Cir. 2004). "Objective reasonableness entails a showing that a reasonable person in the petitioner's circumstances would fear persecution if returned to his native country." *Jian Xing Huang v. U.S. INS*, 421 F.3d 125, 128 (2d Cir. 2005). A "fear may be well-founded even if there is only a slight, though discernible, chance of persecution." *Diallo v. INS*, 232 F.3d 279, 284 (2d Cir. 2000). But a fear is not objectively reasonable if it lacks "solid support" in the record and is merely "speculative at best." *Jian Xing Huang*, 421 F.3d at 129.

To establish a well-founded fear, the applicant can show either a reasonable possibility that he would be "singled out individually" for persecution or a "pattern or practice" of persecution of a group of "persons similarly situated" to the applicant on account of a protected ground. 8 C.F.R. § 1208.13(b)(2)(iii). Because Zheng did not establish a nexus between his resistance to the demolition and a protected ground, his CDP activities in the United States are the only basis for asylum and withholding of removal based on future persecution.

An applicant claiming a prospective fear of persecution based on activities in the United States must make some showing that the government is aware or could become aware of his activities. *See Hongsheng Leng v. Mukasey*, 528 F.3d 135, 143 (2d Cir. 2008). "The appropriate burden of proof varies according to the type

7

of relief sought: an applicant must show a clear probability in the withholding context, and only a reasonable possibility in the asylum context." *Id.* at 143 (internal quotation marks omitted). "This court reviews the factual findings underlying the BIA's determinations under the substantial evidence standard, reversing only if no reasonable fact-finder could have failed to find that petitioner suffered past persecution or had a well-founded fear of future persecution or torture." *Jian Xing Huang*, 421 F.3d at 128 (internal quotation marks omitted).

The record does not compel a conclusion that Zheng's fear is objectively reasonable. While his CDP website profile corroborates his testimony that his personal information is on the CDP website, it does not establish that the Chinese government is aware of the articles he wrote or would single him out for persecution, especially given that he does not assert that he has received any communication from the Chinese government in the years the information has been public. *See Y.C. v. Holder*, 741 F.3d 324, 334 (2d Cir. 2013) (rejecting the applicant's "suggestion that the Chinese government is aware of every anti-Communist or pro-democracy piece of commentary published online" and "that the government would have discovered a single article published on the Internet more than eight years ago" because it was "pure speculation"). Two news

articles about relations between China and the United States report that the Chinese government is verifying the identities of Chinese nationals in the United States for the preparation of travel documents; but the U.S. government is prohibited from disclosing that an individual has applied for asylum, 8 C.F.R. § 1208.6, and the articles do not discuss whether Chinese authorities are investigating activities in the United States. Moreover, the country conditions evidence reflects persecution of CDP members and activists for political activities in China, but not persecution of individuals who were only active in the CDP in the United States. *See Y.C.*, 741 F.3d at 334–35 (denying petition where "record [wa]s silent as to whether the Chinese government views domestic pro-democracy advocates differently from Chinese nationals who espouse pro-democracy ideals abroad"). On this record, the agency reasonably concluded that Zheng's fear was speculative. *See id.; Jian Xing Huang*, 421 F.3d at 129.

III.    Likelihood of Torture

The agency reasonably determined that Zheng failed to meet his burden of demonstrating that he would "more likely than not" be subject to harm amounting to torture. 8 C.F.R. §§ 1208.16(c)(2) (placing the burden on the applicant to establish a likelihood of torture), 1208.18(a)(1) ("Torture is defined as any act by

9

which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.").  As discussed above, Zheng's fear of harm on account of his CDP activities was speculative.  *See Lecaj v. Holder*, 616 F.3d 111, 119–20 (2d Cir. 2010) (holding that an applicant who fails to establish the possibility of persecution for asylum "necessarily fails to demonstrate" the higher likelihood of harm required for withholding of removal and CAT relief).

Because a CAT claim does not require a nexus to a protected ground, *see Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018), Zheng could also assert a fear of torture stemming from his resistance to the demolition of his house. However, he has not identified evidence that the authorities intend to torture him. Zheng testified that his parents had signed the document he had refused to sign, the house had been demolished and, although he did not finish paying the 2000 yuan fine, he did not know if police were still interested in him.  Thus, there is no evidence that anyone in China is still seeking him out.  His general assertion of human rights violations in China is insufficient to state a CAT claim.  *See Mu Xiang Lin v. U.S. Dep't of Justice*, 432 F.3d 156, 159–60 (2d Cir. 2005) (holding that a

CAT applicant must show "that someone in his particular alleged circumstances is more likely than not to be tortured" (emphasis omitted)).

For the foregoing reasons, we deny the petition because Zheng did not establish past persecution on account of political opinion, an objectively reasonable fear of future persecution based on his political activities for the CDP in the United States, or a likelihood of torture in China.   *See* 8 C.F.R. §§ 1208.13(b), 1208.16(c)(2); *Lecaj*, 616 F.3d at 119–20; *Castro*, 597 F.3d at 100; *Hongsheng Leng*, 528 F.3d at 143.

Accordingly, the petition for review is DENIED.   All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court